IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA

v.    CRIMINAL NO.: WDQ-08-0086

STEVE WILLOCK, *et al.*

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

On January 28, 2010, a jury convicted Sherman Pride and Ronnie Thomas of Conspiracy to Participate in a Racketeering Enterprise. The jury found that the conspiracy involved narcotics trafficking, conspiracy to commit murder, and robbery. Pride was also convicted of conspiracy to distribute 50 grams or more of crack. On February 5, 2010, Pride and Thomas filed a joint motion for judgment of acquittal or, in the alternative, a new trial. A hearing was held on June 25, 2010. For the following reasons, the motion was denied.

I.  Background

During the two-week trial, the Government presented wiretap evidence and testimony about the Defendants' activities as members of the Tree Top Piru ("TTP") set of the Bloods gang. The evidence showed that TTP had a well-defined structure and mission. Each member of the gang held a "rank" and was required to "put in work"--*i.e.*, collect dues, sell drugs, commit

robberies, and intimidate and even murder rivals--to advance the gang's objectives. As TTP leader Steve Willock testified, these objectives were the acquisition and preservation of territory and the generation of revenue for the gang through drug trafficking.

Willock and Van Sneed, another high-ranking TTP member, testified that Thomas was a TTP member and was intimately familiar with the gang's criminal activities. Willock testified that Thomas was an "OG" (an "Original Gangster") in TTP, and one of the leaders of the set in West Baltimore. Sneed testified that Thomas had attended TTP meetings (or "911s"); paid and collected dues, some of which would be used to purchase guns for the gang; and agreed to assist Sneed in selling heroin.[1] The Government played recordings of calls in which Thomas made arrangements with other TTP members to assault and rob a store owner who was selling *Stop Snitchin'*--the DVD starring Thomas that had made him a local celebrity--without his permission. The Government also presented clips from *Stop Snitchin' II*, in which Thomas praises the Bloods in an improvised rap.

Willock testified that Pride was also an OG in TTP, and the organization's leader on the Eastern Shore of Maryland. The

---

[1] The Government played a January 29, 2008 recorded conversation between Thomas and Sneed, in which Thomas agreed to find a buyer for 25 grams of heroin that Sneed wished to sell.

Government introduced correspondence between Willock and Pride about TTP matters, which revealed Pride's extensive involvement with the gang.[2]  The Government also presented the testimony of Horace Sappleton, who met Pride while the two were incarcerated in Orange, Virginia.  Sappleton testified that Pride had boasted about being the leader of the Bloods on the Eastern Shore and about having gone to California several times to meet with Bloods' leaders and purchase large quantities of cocaine, which Pride would then "cook" and sell as crack in Maryland.  Pride told Sappleton that he had gone to California once or twice a month to buy between one and four kilograms of cocaine.

The Government also presented the testimony of Corporal Michael Matthews of the Wicomico County Sheriff's Office, who stated that on August 22, 2007, he responded to a report of a domestic dispute at 909-G Booth Street in Salisbury, Maryland. Krystal McCarden testified that she and her mother--Pride's girlfriend at time--lived at 909-G Booth Street and that her mother and Pride had an argument that night about a yellow bag. McCarden stated that Pride had demanded that her mother tell him where the bag was, but her mother had refused.  McCarden eventually found the bag and gave it to Pride.  When the police

---

[2] In one letter, Pride described the importance of "putting in work" and "taking over" neighborhoods.  He also described the TTP as "anybody killers" and extolled the virtues of "banging" on Crips.

arrived, McCarden testified, Pride put the bag into a car.[3]

Matthews testified that, when he arrived at the scene, he and other officers stopped a gray Chevrolet Malibu that attempted to drive away as soon as the officers arrived. As the driver--Alfred Russell[4]--and two passengers were getting out of the car, Matthews noticed a yellow bag on the floor of the passenger seat that was filled with what appeared to be marijuana. Matthews searched the bag and discovered that it contained large quantities of cocaine and marijuana.

The Government also presented extensive evidence of the criminal activities of other TTP members. Willock testified that a TTP member known as "P-Gritty" murdered another TTP member at the direction of a TTP superior as part of a gang initiation.[5] Sneed testified that he had shot a member of a rival gang, the Crips, during a confrontation at a local nightclub. A confidential informant testified that he had made controlled purchases of drugs from TTP members Jerrod Fenwick

---

[3] McCarden testified that she believed the bag contained meat and that Pride had put the bag into the trunk of the car, a gray Chevrolet Malibu. Matthews testified that he searched the Malibu--including its trunk--and recovered a yellow bag containing drugs from the passenger-side floor. Matthews testified that this was the only yellow bag found in the Malibu.

[4] McCarden testified that Alfred Russell is her uncle.

[5] Thomas and Willock discussed this murder while incarcerated together. Thomas indicated that he wished to kill "P-Gritty" in retaliation for the murder.

and Shawn Frazier--transactions that were facilitated by another TTP member, Kevin Gary.  In short, the Government's evidence showed that TTP was a drug-trafficking organization whose members used violence to acquire and preserve drug-trafficking territory, and that Thomas and Pride had participated in TTP's affairs with knowledge of its criminal purposes and the intent that those purposes be carried out.

On January 28, 2010, Thomas and Pride were convicted of Conspiracy to Participate in a Racketeering Enterprise in violation of 18 U.S.C. § 1962(d) ("RICO").  Pride was also convicted of Conspiracy to Distribute and Possess with the Intent to Distribute Narcotics in violation of 21 U.S.C. § 846. On February 5, 2010, they filed a joint motion for judgment of acquittal or, in the alternative, a new trial.  Paper No. 858.

II. Analysis

Thomas and Pride make three arguments in support of their motion: (1) the Government's evidence was insufficient to support the jury's verdict, (2) the verdict was against the weight of the evidence, and (3) the Government knowingly offered perjured testimony.

A.  Challenges to the Evidence Supporting the Verdict

Thomas and Pride's first two arguments arise under Rules 29 and 33, which govern motions for judgment of acquittal and new trial, respectively.  Although the motions may be combined, they

5

are governed by different standards.  A motion under Rule 29 challenges the sufficiency of the evidence to support the conviction.  The Court must determine whether, "viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the defendant guilty beyond a reasonable doubt."  *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008) (emphasis in original).

Rule 33 allows a district court to grant a new trial in the interest of justice.  *See* Fed. R. Crim. P. 33; *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985).  One basis for granting a new trial under Rule 33 is that the jury's verdict was against the weight of the evidence.  *Arrington*, 757 F.2d at 1485.  When a defendant raises this argument under Rule 33, "the court's authority is much broader" than it is under Rule 29.  *Id*.  The court "is not constrained by the requirement that it view the evidence in the light most favorable to the government," and it may evaluate the credibility of witnesses.  *Id*.  This discretion, though broad, should be exercised "sparingly"; a new trial should be granted "only when the evidence weighs heavily against the verdict."  *United States v. Perry*, 335 F. 3d 316, 320 (4th Cir. 2003).

Thomas and Pride's motion fails under both standards.  They argue that their convictions cannot be sustained because there was no evidence that they conspired to participate in or were

6

otherwise aware of: (1) murders committed by other TTP members, (2) drug trafficking in furtherance of TTP, or (3) robberies committed by TTP members. Pride also argues that there was insufficient evidence that he conspired to distribute narcotics. As the Government notes, Thomas and Pride's RICO argument reflects a misunderstanding of the proof required for a RICO conspiracy conviction in that it assumes that the Government must prove that the Defendants had personal involvement in the racketeering activity underlying their convictions.[6]

A defendant may be convicted of conspiring to violate RICO even if he "does not agree to commit or facilitate each and every part of the substantive offense." *See Salinas v. United*

---

[6] Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id*. § 1962(c). Section 1962(d) makes it unlawful for any person to conspire to violate § 1962(c). A RICO conviction requires proof of an "enterprise" and a "pattern of racketeering activity." *See* 18 U.S.C. § 1961(1). An "enterprise" includes "any union or group of individuals associated in fact." *Id*. § 1961(4). An "association-in-fact enterprise" requires proof of: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009). A "pattern of racketeering activity," requires proof of two predicate acts of "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1).

Thomas and Pride do not challenge the sufficiency of the evidence that TTP was an "enterprise."

*States*, 522 U.S. 52, 63 (1997).  The Government need not prove that the defendant personally committed two acts of racketeering activity; it is sufficient if two such acts were committed by any member of the conspiracy, and the defendant joined the conspiracy with knowledge of--and intent to further--its criminal purposes.  *See id*. at 64-66.  "[S]o long as they share a common purpose, conspirators are liable for the acts of their co-conspirators."  *Id*. at 65.

At trial, the Government proved that TTP was an "enterprise" that had a purpose--acquiring and preserving territory--and a well-defined hierarchy of members, who for many years had pursued this purpose in Maryland.  The Government offered evidence of numerous predicate acts of racketeering activity by TTP members, including drug-trafficking (*e.g.*, by Pride, Fenwick and Sneed), assaults (*e.g.*, by Sneed), murders (*e.g.*, by "P-Gritty"), and other violent crimes.

The evidence showed that Thomas had willingly participated in the affairs of the TTP with knowledge of its purpose and the violent means used to achieve this purpose.  Thomas helped Sneed collect dues from members, attended "911s," became an "OG" on the recommendation of Fenwick and Gary, and promoted the Bloods in *Stop Snitchin' II*.  Thomas also agreed to assist Sneed in dealing heroin and enlisted fellow TTP members to rob and assault a store owner who sold *Stop Snitchin'* without permis-

sion.  Thomas's intimate involvement with the affairs of TTP made it clear that he was aware of the gang's criminal purposes and that he joined TTP with intent that those purposes be carried out.  The Government's evidence, viewed under either Rule 29 or Rule 33, supported the jury's verdict against Thomas.

The evidence also showed that Pride had willing participated in the TTP's affairs with knowledge of its criminal activities.  Willock testified that Pride was an OG, and the Government introduced letters from Pride to Willock discussing TTP matters.  Pride boasted to Sappleton that he was the leader of TTP on the Eastern Shore and had travelled to California to purchase large quantities of drugs from Bloods leaders.  The evidence of the events leading to Pride's arrest on August 22, 2007--during the time of the RICO conspiracy--was sufficient for the jury to infer that Pride had possessed large quantities of crack on that date that had been packaged for resale.  This evidence was sufficient to convict Pride of conspiring to participate in a RICO enterprise.  Sappleton's testimony and the testimony about the August 22 arrest was also sufficient to show that Pride had conspired to possess with the intent to distribute crack.  The Government's evidence, viewed under either Rule 29 or Rule 33, supported the jury's verdict against Pride.

B. New Trial Based on the Government's Presentation of
   Perjured Testimony

Thomas and Pride also argue that they are entitled to a new trial because the Government knowingly offered perjured testimony by Sneed. Specifically, they note a discrepancy between Sneed's testimony that on January 29, 2008, Thomas agreed to find a buyer for 25 grams of heroin that Sneed wished to sell and Sneed's plea agreement and testimony given in another proceeding that the discussion with Thomas was about the sale of a kilogram of cocaine. They contend that these prior inconsistent statements show that Sneed perjured himself at trial and--because they were in his plea agreement--the Government knew that it was offering perjured testimony.

"A conviction acquired through the knowing use of perjured testimony by the prosecution violates due process." *United States v. White*, 238 F.3d 537, 540 (4th Cir. 2001). The defendant bears the "heavy" burden of showing that the testimony was false and that the Government knew it to be so. *See United States v. Griley*, 814, F.2d 967, 970-71 (4th Cir. 1987). Thomas and Pride have not carried this burden because they have not shown that Sneed perjured himself, *i.e.*, that he deliberately made false or misleading statements while testifying at trial. Thomas and Pride do not argue that Sneed's testimony was false; they appear to agree that the January 29, 2008 conversation was

10

about heroin, not cocaine.  Thomas and Pride's argument focuses on the alleged falsity of *previous* statements that Sneed has given about the conversation with Thomas.  Their contention appears to be that these inconsistent statements make Sneed's testimony as a whole so incredible that it must have been perjured, and that the Government must have known that it was offering the testimony of liar.[7]  This conjectural argument falls far short of the heavy burden they must carry to obtain a new trial based on perjured testimony.  Accordingly, their motion for a new trial on this basis will be denied.

---

[7] At oral argument, Thomas's counsel argued that Sneed's prior inconsistent statements were *Giglio* material, which should have been disclosed by the Government before trial.  Thomas contended that this putative *Giglio* violation was another basis for a new trial.

*Giglio* does not require disclosure before trial:  "No due process violation occurs as long as [the] material is disclosed to a defendant in time for its effective use at trial." *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985).  The Government provided Thomas with Sneed's prior statements at trial, and Thomas's counsel cross-examined Sneed extensively about these statements.  Sneed was also recalled as part of the Thomas's case and questioned again about his conversation with Thomas.  The jury was thus able to evaluate Sneed's credibility in light of his shifting story about the January 29, 2008 conversation.  The *Giglio* material was provided in time for its effective use at trial.

III. Conclusion

For the reasons stated above, Thomas and Pride's motion for judgment of acquittal or a new trial was denied.

June 28, 2010                                          _____/s/_____
Date                                                            William D. Quarles, Jr.
                                                                  United States District Judge